UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 19-25174-CIV-MARTINEZ

GIANNI ARRIAGA and NATALIA RABKO,
individually and on behalf of all others
similarly situated;

                       Plaintiffs,                  COLLECTIVE AND  CLASS
                                                  ACTION REPRESENTATION

vs.

450 NORTH RIVER DRIVE LLC; RJ RIVER LLC;
KLIMA LLC; RJ 210 LLC; 210 23RD MANAGEMENT
LLC; ROMAN K. JONES, individually; ARISTIDIS
NANOS, individually; MARK LEHMKUHL,
Individually; and LEE LYON, individually;

                       Defendants.

**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs, Gianni Arriaga and Natalia Rabko, individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This lawsuit seeks to recover minimum wages, overtime wages, and other damages for Plaintiffs and their similarly situated co-workers – servers, bussers, runners, bartenders, and other "Tipped Workers" – who work or have worked at Kiki on the River located at 450 NW North River Drive, Miami, Florida 33028 and Mandrake located at 210 23rd Street, Miami Beach, Florida 33140 (hereinafter, the "Restaurants").

2.     Kiki on the River was formed in 2016 through a partnership between Roman Jones,

Aristidis Nanos, Lee Lyon, and Mark Lehmkuhl.[1] Since its inception, Kiki on the River has received rave reviews and has become one of Miami's most popular restaurants often frequented by celebrities and athletes. In this regard, Kiki on the River has been featured on prominent websites such as Forbes.com, being described as having a top ten lobster dish in the nation.[2] Not only has it been also called "a waterfront Aegean paradise," the Miami Herald has also given it an "Excellent 3 ½ stars" review.[3]

3.      Based off of Kiki on the River's success, its owners expanded their already well-known presence in South Florida by opening Mandrake on Miami Beach in January 2019.[4] Mandrake, consisting of 5,000 square feet, features an intricately designed interior with life-sized statues, a sushi bar, a formal dining room, and a lush outdoor garden patio.[5]

4.      Defendants have been part of a single integrated enterprise that has jointly employed Plaintiff and other Tipped Workers. Defendants have maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including the ability to hire, fire, and discipline them. In this regard, the Restaurants often share Tipped Workers between locations, share common ownership, share day-to-day management, and apply the same employment policies to Tipped Workers at both locations.

---

[1] *See* About Us; Kiki on the River Website (available at https://kikiontheriver.com/about.html) (last accessed April 30, 2019).

[2] *See* Kiki on the River Website: Industry News, Sept. 17, 2018 (*available at* https://kikiontheriver.com/blog/10-best-creative-spins-on-lobster/) (last accessed April 30, 2019).

[3] *See* Kiki on the River Website: Industry News, Aug. 10, 2018 (*available at* https://kikiontheriver.com/blog/kiki-on-the-river-in-miami-is-a-waterfront-aegean-paradise/) (last accessed April 30, 2019); Hamersly, Kendall, "LeBron, 'Housewives,' and South Beach partygoers love this Miami River spot. You probably will, too." Miami Herald, Oct. 19, 2017 (*available at* https://www.miamiherald.com/entertainment/restaurants/article179730741.html) (last accessed April 30, 2019).

[4] See Liss, Sara, "Is this new 'modern Asian' restsaurant Miami's next celebrity hot spot?" Miami Herald, Feb. 25, 2019 (*available at h*ttps://www.miamiherald.com/miami-com/restaurants/article226748694.html) (last accessed April 30, 2019).

[5] See "Mandrake Miami Opened on Chinese New Year," South Florida Nights Magazine, Feb. 5, 2019 (*available at* https://www.soflanights.com/archives/192315) (last accessed May 2, 2019).

5.      At all times relevant, Defendants paid Plaintiffs and others similarly situated Tipped Workers at the "tipped" minimum wage rate.

6.      Defendants, however, have not satisfied the strict requirements under the FLSA that would allow them to pay Tipped Workers this reduced minimum wage (i.e. - take a "tip credit").

7.      Defendants failed to notify Plaintiffs and similarly situated Tipped Workers of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to their wages.

8.      Defendants have maintained a policy and practice whereby the Restaurants keep approximately 5% of the gratuities left to Tipped Workers by customers. In this regard, Defendants charge its customers a 22% gratuity labeled as a "service charge" and of this gratuity, only 17% is distributed to Tipped Workers as part of the mandatory tip pooling arrangement established and enforced by the Defendants.

9.      The 22% "service charge" is in fact a gratuity, as customers have the discretion to reduce or remove it from their bill. This policy and practice is well documented on online forums such as Yelp.com, including the following:




https://www.yelp.com/biz/kiki-on-the-river-miami-2?q=service (last accessed April 26, 2019).



https://www.yelp.com/biz/mandrake-miami-miami-beach?q=service  (last  accessed  April  26,

2019).

10.     Moreover, Defendants do not include all amounts labeled as "service charges" in the Restaurants' gross receipts.

11.     At Mandrake, Defendants have also required Plaintiffs and similarly situated Tipped Workers to engage in a tip distribution scheme wherein they must share a daily portion of their total tips with individuals not eligible to receive tips. In this regard, at Kiki on the River, Tipped Workers were required to share tips with promoters. At Mandrake, Tipped Workers were required to share tips with sushi chefs.

12.     The promoters who received a portion of tips at Kiki on the River had very minimal customer interaction. In this regard, promoters are responsible for booking large parties for Kiki on the River.  During service, promoters do not wait on customers, do not take customer orders, and do not deliver food or beverages to customers.  As a result, promoters at Kiki on the River are not entitled to share tips under the FLSA.

13.     Individuals employed as sushi chefs are responsible for preparing and rolling sushi and do not have interaction with customers.  In this regard, sushi chefs do not wait on customers, take customer orders, or deliver food or beverages to customers. As a result, sushi chefs at Mandrake are not entitled to share tips under the FLSA.

14.     Defendants also maintain a policy and practice whereby Tipped Workers are required to spend more than 20% of their shift performing non-tip producing side work, including, but not limited to, sweeping floors, polishing silverware, washing and cleaning condiment containers, restocking mise en place, folding napkins, setting up and breaking down the bar areas and dining areas of the restaurant, and attending pre-shift meetings.

15.     The duties that Defendants required Tipped Workers to perform are duties that are

customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

16.     The side work that Defendants require of Tipped Workers is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.  Furthermore, Defendants require Tipped Employees to perform most side work before the restaurants open or after the restaurants close and customers leave.

17.     Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments. Despite this, Tipped Employees are not required to record the amount of time they spend performing side work.

18.     Defendants also have a policy and practice of failing to pay Tipped Workers no less than 1.5 times the applicable minimum wage rate for all hours worked over 40 hours. Moreover at Mandrake, in the event Defendants could apply a tip credit (which they cannot), Defendants incorrectly paid 1.5 times the reduced cash rate for Tipped Workers for hours worked over 40 in a workweek.

19.     Plaintiffs brings this action on behalf of themselves and similarly situated current and former Tipped Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

20.     Plaintiffs also bring this action on behalf of themselves and similarly situated current and former Tipped Workers in Florida pursuant to Florida Common Law under theories of Unjust Enrichment and Conversion under Federal Rule of Civil Procedure 23 ("Rule 23").

## THE PARTIES

### Plaintiffs

#### Gianni Arriaga

21.     Gianni Arriaga ("Arriaga") is an adult individual who is a resident of Miami-Dade County, Florida.

22.     Arriaga was employed by Defendants at Mandrake as a server from January 2019 through approximately April 2019.

23.     Arriaga is a covered employee within the meaning of the FLSA.

24.     A written consent form for Arriaga was filed contemporaneously with the original Complaint.

#### Natalia Rabko

25.     Natalia Rabko ("Rabko") is an adult individual who is a resident of Miami-Dade County, Florida.

26.     Rabko was employed by Defendants at Kiki on the River as a bartender from approximately November 2016 through summer of 2017.

27.     Rabko is a covered employee within the meaning of the FLSA.

28.     A written consent form for Rabko was filed on January 30, 2020 with the Court (Dkt. No. 24).

### Defendants

29.     Defendants 450 North River Drive LLC; RJ River LLC; Klima LLC; RJ 210 LLC; 210 23rd Management LLC, Roman K. Jones, Aristidis Nanos, Mark Lehmkuhl, and Lee Lyon have jointly employed Plaintiffs and similarly situated employees at the Restaurants at all times relevant.

30.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

31.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA.

**450 North River Drive LLC**

32.     Together with the other Defendants, 450 North River Drive LLC has owned and operated Kiki on the River during the relevant time period.

33.     450 North River Drive LLC is a domestic limited liability corporation organized and existing under the laws of Florida.  It lists its principal address as 450 NW North River Drive, Miami, Florida 33028, the same address as Kiki on the River.

34.     According to the Florida Department of Business & Professional Regulation, 450 North River Drive LLC is the active liquor license holder for Kiki on the River, with a valid liquor license through March 31, 2020.

35.     450 North River Drive LLC is owned, operated, and managed by co-defendants Jones, Nanos, Lehmkuhl, and Lyon.

36.     At all relevant times, 450 North River Drive LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees at the Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

37.     450 North River Drive LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of minimum wages and gratuities.

38.     Upon information and belief, at all relevant times 450 North River Drive LLC has had an annual gross volume of sales in excess of $500,000.

**RJ River LLC**

39.     Together with the other Defendants, RJ River LLC has owned and operated Kiki on the River during the relevant time period.

40.     RJ River LLC is a domestic corporation organized and existing under the laws of Florida. It lists 450 NW North River Drive, Miami, Florida 33028, the same address as Kiki on the River. RJ River LLC is currently listed as "manager" for 450 North River Drive LLC as of December 2017.

41.     RJ River LLC is owned, operated, and managed by co-defendants Jones, Nanos, Lehmkuhl, and Lyon. Moreover, RJ River LLC lists Roman K Jones as its manager, with an address of 3350 Mary Street, Miami, Florida 33133.

42.     At all relevant times, RJ River LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees at the Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

43.     RJ River LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of minimum wages and gratuities.

44.     Upon information and belief, at all relevant times RJ River LLC has had an annual gross volume of sales in excess of $500,000.

**Klima LLC**

45.     Together with the other Defendants, Klima LLC has owned and operated Mandrake during the relevant time period.

46.     Klima LLC is a domestic limited liability corporation organized and existing under the laws of Florida. It lists 210 23rd Street, Miami Beach, Florida 33139 as its principal place of business, the same address as Mandrake.

47.     According to the Florida Department of Business & Professional Regulation, Klima LLC is the active liquor license holder for Mandrake, with a valid liquor license through March 31, 2020.

48.     Based on information and belief, Klima LLC is now owned, operated, and managed by co-defendants Jones, Nanos, Lehmkuhl, and Lyon.

49.     At all relevant times, Klima LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees at the Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

50.     Klima LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of minimum wages and gratuities.

51.     Upon information and belief, at all relevant times Klima LLC has had an annual gross volume of sales in excess of $500,000.

**RJ 210 LLC**

52.     Together with the other Defendants, RJ 210 LLC has owned and operated Mandrake during the relevant time period.

53.     RJ 210 LLC is a domestic limited liability corporation organized and existing under the laws of Florida. It lists 5800 LaGorce Drive, Miami Beach, Florida 33139 as its principal place of business, an address associated with co-defendant Roman Jones. It lists Alan Levine as its resident agent, with an address of 3350 Mary Street, Miami, Florida 33133.

10

54.     Based on information and belief, RJ 210 LLC is owned, operated, and managed by co-defendants Jones, Nanos, Lehmkuhl, and Lyon. In this regard, it lists its manager as Roman Jones, with an address of 5800 LaGorce Drive, Miami Beach, Florida 33140

55.     At all relevant times, RJ 210 LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees at the Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

56.     RJ 210 LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of minimum wages and gratuities.

57.     Upon information and belief, at all relevant times RJ 210 LLC has had an annual gross volume of sales in excess of $500,000.

**210 23rd Management LLC**

58.     Together with the other Defendants, 210 23rd Management LLC has owned and operated Mandrake during the relevant time period.

59.     210 23rd Management LLC is a domestic limited liability corporation organized and existing under the laws of Florida. It lists 5800 LaGorce Drive, Miami Beach, Florida 33139 as its principal place of business, an address associated with co-defendant Roman Jones. It lists Alan Levine as its resident agent, with an address of 3350 Mary Street, Miami, Florida 33133.

60.     Based on information and belief, 210 23rd Management LLC is owned, operated, and managed by co-defendants Jones, Nanos, Lehmkuhl, and Lyon. In this regard, it lists its manager as Roman Jones, with an address of 5800 LaGorce Drive, Miami Beach, Florida 33140.

61.     At all relevant times, 210 23rd Management LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees at the Restaurants, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

62.     210 23rd Management LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of minimum wages and gratuities.

63.     Upon information and belief, at all relevant times 210 23rd Management LLC has had an annual gross volume of sales in excess of $500,000.

**Roman K. Jones**

64.     Upon information and belief, Roman K. Jones ("Jones") is a resident of the State of Florida.

65.     At all relevant times, Jones has been a co-owner and co-operator of the Restaurants and various corporations associated with the Restaurants. In this regard, Jones has been identified, and has spoken directly about, his involvement in the opening, ownership, and management of both Restaurants in various publications. For example, Kiki on the River's website describes it as being a passion project of "Roman Jones," along with the other individual Defendants.[6] He has similarly been identified as an owner and operator of Kiki on the River in a September 13, 2016 New Miami Times Article[7] and as an owner and operator of Mandrake in a February 7, 2019 New Miami Times Article.[8] Moreover, Jones' own Instagram profile features a list of his

---

[6] *See* Kiki on the River Website: About us (*available at* https://kikiontheriver.com/about.html) (last accessed May 3, 2019).
[7] *See* Guerra, Alexandria: "Kiki on the River Offers Greek Fare and Gondola Rides." Miami New Times (Sept. 13, 2016) (*available at* https://www.miaminewtimes.com/content/printView/8742531) (last accessed May 3, 2019).
[8] *See* Buch, Clarissa: "Owners of Kiki on the River Open Mandrake in Miami Beach." Miami New Times (Feb. 7, 2019) (*available at* https://www.miaminewtimes.com/content/printView/11069012) (Last accessed May 3, 2019).

establishments, including the Restaurants, and also prominently feature him at both Restaurants with guests and celebrities.[9]

66.    In addition to articles and Instagram, the corporate filings for the Restaurants also show Jones' ownership and management. Specifically, Jones signed as a "managing member" for the two corporate entities that merged together to form the current 450 North River Drive LLC on December 6, 2017. He is also listed as manager for RJ River LLC, signed the original Articles of Incorporation for this entity, and has signed the most recent 2018 and 2019 Annual Reports for RJ River LLC. Jones is also identified as "manager" for 210 23rd Management LLC and RJ 210 LLC in their respective corporate filings.

67.    Jones maintains a direct and significant management role in the Restaurants.

68.    At all relevant times, Jones has had the power over payroll decisions at the Restaurants, including the power to retain time and/or wage records.

69.    At all relevant times, Jones has been actively involved in managing the day to day operations of the Restaurants.

70.    At all relevant times, Jones has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at the Restaurants.

71.    At all relevant times, Jones has had the power to transfer the assets and/or liabilities of the Restaurants.

72.    At all relevant times, Jones has had the power the declare bankruptcy on behalf of the Restaurants.

73.    At all relevant times, Jones has had the power to enter into contracts on behalf of the Restaurants.

---

[9] *See* Instagram: @theromanjones (last accessed May 3, 2019).

74.     At all relevant times, Jones has had the power to close, shut down, and/or sell the Restaurants.

75.     Jones is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Aristidis Nanos**

76.     Upon information and belief, Aristidis Nanos ("Nanos") is a resident of the State of Florida.

77.     At all relevant times, Nanos has been a co-owner and co-operator of the Restaurants and various corporations associated with the Restaurants. In this regard, Nanos has been identified about his involvement in the opening, ownership, and management of both Restaurants in various publications (featured on the Restaurants' websites). For example, Kiki on the River's website describes it as being a passion project of "Aris Nanos," along with the other individual Defendants.[10] He has similarly been identified as an owner and operator of Kiki on the River in a September 13, 2016 New Miami Times Article[11] and as an owner and operator of Mandrake in a February 7, 2019 New Miami Times Article.[12]

78.     Nanos maintains a direct and significant management role in the Restaurants.

79.     At all relevant times, Nanos has had the power over payroll decisions at the Restaurants, including the power to retain time and/or wage records.

80.     At all relevant times, Nanos has been actively involved in managing the day to day operations of the Restaurants.

---

[10] *See* Kiki on the River Website: About us (*available at* https://kikiontheriver.com/about.html) (last accessed May 3, 2019).
[11] *See supra* fn 7.
[12] *See supra* fn 8.

81.     At all relevant times Nanos has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at the Restaurants.

82.     At all relevant times, Nanos has had the power to transfer the assets and/or liabilities of the Restaurants.

83.     At all relevant times, Nanos has had the power the declare bankruptcy on behalf of the Restaurants.

84.     At all relevant times, Nanos has had the power to enter into contracts on behalf of the Restaurants.

85.     At all relevant times, Nanos has had the power to close, shut down, and/or sell the Restaurants.

86.     Nanos is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Mark Lehmkuhl**

87.     Upon information and belief, Mark Lehmkuhl ("Lehmkuhl") is a resident of the State of Florida.

88.     At all relevant times, Lehmkuhl has been a co-owner and co-operator of the Restaurants and various corporations associated with the Restaurants. In this regard, Lehmkuhl has been identified about his involvement in the opening, ownership, and management of both Restaurants in various publications (featured on the Restaurants' websites). For example, Kiki on the River's website describes it as being a passion project of "Mark Lehmkuhl," along with the other individual Defendants.[13] He has similarly been identified as an owner and operator of Kiki

---

[13] *See* Kiki on the River Website: About us (*available at* https://kikiontheriver.com/about.html) (last accessed May 3, 2019).

on the River in a September 13, 2016 New Miami Times Article[14] and as an owner and operator of Mandrake in a February 7, 2019 New Miami Times Article.[15]

89.     Lehmkuhl maintains a direct and significant management role in the Restaurants.

90.     At all relevant times, Lehmkuhl has had the power over payroll decisions at the Restaurants, including the power to retain time and/or wage records.

91.     At all relevant times, Lehmkuhl has been actively involved in managing the day to day operations of the Restaurants.

92.     At all relevant times, Lehmkuhl has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at the Restaurants.

93.     At all relevant times, Lehmkuhl has had the power to transfer the assets and/or liabilities of the Restaurants.

94.     At all relevant times, Lehmkuhl has had the power the declare bankruptcy on behalf of the Restaurants.

95.     At all relevant times, Lehmkuhl has had the power to enter into contracts on behalf of the Restaurants.

96.     At all relevant times, Lehmkuhl has had the power to close, shut down, and/or sell the Restaurants.

97.     Lehmkuhl is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

---

[14] *See supra* fn 7.
[15] *See supra* fn 8.

**Lee Lyon**

98.     Upon information and belief, Lee Lyon ("Lyon") is a resident of the State of Florida.

99.     At all relevant times, Lyon has been a co-owner and co-operator of the Restaurants and various corporations associated with the Restaurants. In this regard, Lyon has been identified about his involvement in the opening, ownership, and management of both Restaurants in various publications (featured on the Restaurants' websites). For example, Kiki on the River's website describes it as being a passion project of "Lee Lyon," along with the other individual Defendants.[16] He has similarly been identified as an owner and operator of Kiki on the River in a September 13, 2016 New Miami Times Article.[17]

100.    Moreover, Lyon has been directly involved in some of the corporations operating the Restaurants.

101.    In this regard, Lyon was listed as an original "manager" for 450 North River Drive LLC's corporate filings in 2016.

102.    Lyon maintains a direct and significant management role in the Restaurants.

103.    At all relevant times, Lyon has had the power over payroll decisions at the Restaurants, including the power to retain time and/or wage records.

104.    At all relevant times, Lyon has been actively involved in managing the day to day operations of the Restaurants.

105.    At all relevant times, Lyon has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees at the Restaurants.

---

[16] *See* Kiki on the River Website: About us (*available at* https://kikiontheriver.com/about.html) (last accessed May 3, 2019).
[17] *See supra* fn 7.

17

106.   At all relevant times, Lyon has had the power to transfer the assets and/or liabilities of the Restaurants.

107.   At all relevant times, Lyon has had the power the declare bankruptcy on behalf of the Restaurants.

108.   At all relevant times, Lyon has had the power to enter into contracts on behalf of the Restaurants.

109.   At all relevant times, Lyon has had the power to close, shut down, and/or sell the Restaurants.

110.   Lyon is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

111.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

112.   This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

113.   Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

114.   Plaintiffs bring the First, Second, and Third Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who work or have worked as Tipped Workers at Mandrake and Kiki on the River from December 17, 2016 and the date of final judgment who elect to opt-in to this action (the "FLSA Collective").

18

## **CLASS ACTION ALLEGATIONS**

115.     Plaintiffs bring the Third, Fourth, and Fifth Causes of Action under Florida

common law, under Rule 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Tipped Workers at Mandrake and Kiki on
> the River in Florida between December 17, 2015 and the date of final judgment in
> this matter (the "Rule 23 Class").

116.     The Rule 23 Class Members are so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

117.     There are more than fifty Rule 23 Class Members.

118.     Plaintiffs' claims are typical of those claims that could be alleged by any Rule 23

Class Member, and the relief sought is typical of the relief which would be sought by each Rule

23 Class Member in separate actions.

119.     Plaintiffs and the Rule 23 Class Members have all been injured in that they have

been uncompensated or under-compensated due to Defendants' common policies, practices, and

patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class

Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts

as to each of the Rule 23 Class Members.

120.     Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class

Members and have no interests antagonistic to the Rule 23 Class Members.

121.     Plaintiffs are represented by attorneys who are experienced and competent in both

class action litigation and employment litigation and have previously represented many plaintiffs

and classes in wage and hour cases.

122.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

123.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class Members individually and include, but are not limited to, the following:

(a) whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiffs and the Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class Members;

(b) whether Defendants' policy of failing to pay employees was instituted willfully or with reckless disregard of the law.

## PLAINTIFFS' FACTUAL ALLEGATIONS

124.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Gianni Arriaga**

125.    During his employment, Arriaga generally worked the following scheduled hours, unless he missed time for vacation, sick days, and/or holidays or obtained additional shifts:

(a) 3 to 4 days per week, consisting of dinner shifts, for an approximate average of 35 hours per week.

126.    In some weeks due to longer shifts and/or extra shifts, Arriaga worked over forty hours per week.  For instance, as of March 8, 2019, Arriaga's year to date overtime hours were 18.69 hours.

127.    Throughout his employment, Defendants applied a tip credit towards the minimum wage rate paid to Arriaga for work performed.

128.    Defendants failed to properly notify Arriaga of the tip credit provisions of the FLSA or of their intent to apply a tip credit to his wages.

129.    Defendants suffered or permitted Arriaga to perform non-tip producing side work for more than 20% of his worktime on a consistent basis, including pre-shift side work, running side work, and closing side work. These duties included, but are not limited to: polishing

silverware, washing and cleaning condiment containers, such as soy sauce containers, refilling soy sauce containers, restocking mise en place, marking trays, folding napkins, setting up and breaking down the dining area of the restaurant, and attending pre-shift meetings.

130.    Defendants instituted a policy and practice of unlawfully retaining approximately 5% of gratuities left for Tipped Workers, including Arriaga.

131.    Defendants also instituted a mandatory tip pooling arrangement at Mandrake that allocated a portion of Arriaga's tips to employees who are in positions that are not entitled to tips under the FLSA, including, but not limited to, sushi chefs.

132.    Defendants also knowingly retained from Arriaga administrative fees paid by customers of Mandrake's private events.

133.    Defendants did not allow Arriaga to retain all of the tips that he earned.

134.    As a result of the above, Defendants did not satisfy the requirements under the FLSA by which they could apply a tip credit to Arriaga's wages. As such, Arriaga was entitled to receive the full statutory minimum wage for the first 40 hours per workweek, and 1.5 times the full minimum wage rate for all hours worked beyond 40 per workweek.

**Natalia Rabko**

135.    During her employment, Rabko generally worked the following scheduled hours, unless she missed time for vacation, sick days, and/or holidays or obtained additional shifts:

> (a) 4 to 5 days per week, consisting of dinner shifts, for an approximate
> average of 41 hours per week.

136.    In some weeks due to longer shifts and/or extra shifts, Rabko worked over forty hours per week.  For instance, in the workweek ending May 6, 2017, Rabko worked 49 hours (9 hours of overtime).

137.     Throughout her employment, Defendants applied a tip credit towards the minimum wage rate paid to Rabko for work performed.

138.     Defendants failed to properly notify Rabko of the tip credit provisions of the FLSA or of their intent to apply a tip credit to her wages.

139.     Defendants suffered or permitted Rabko to perform non-tip producing side work for more than 20% of her worktime on a consistent basis, including pre-shift side work, running side work, and closing side work. These duties included, but are not limited to: sweeping the floors, cutting fruit for drinks and garnishes, cleaning and setting up bars in restaurant, and restocking bar areas.  For instance, Rabko recalls reporting to work between 10:00 am to 10:30 am to set up for a 12:00 pm lunch opening.

140.     Defendants instituted a policy and practice of unlawfully retaining approximately 5% of gratuities left for Tipped Workers, including Rabko.

141.     Defendants also instituted a mandatory tip pooling arrangement at Kiki on the River that allocated a portion of Rabko's tips to employees who are in positions that are not entitled to tips under the FLSA, including, but not limited to, promoters.

142.     Defendants also knowingly retained from Rabko administrative fees paid by customers of Kiki on the River's private events.

143.     Defendants did not allow Rabko to retain all the tips she earned.

144.     As a result of the above, Defendants did not satisfy the requirements under the FLSA by which they could apply a tip credit to Rabko's wages. As such, Rabko was entitled to receive the full statutory minimum wage for the first 40 hours per workweek, and time and 1.5 times the full minimum wage rate for all hours worked beyond 40 per workweek.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

145.    Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

146.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

147.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to provide proper notice of the tip credit.

148.    Defendants have also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the FLSA Collective to distribute a portion of their tips to the house and also to workers who do not "customarily and regularly" receive tips, including but not limited to, promoters and sushi chefs.

149.    Defendants have also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the FLSA Collective to perform a substantial amount of non-tip producing "side work" in excess of 20% of their time at work. During these periods, Defendants have compensated Plaintiffs and the FLSA Collective at the tipped minimum wage rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

150.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA

in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

151.    Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

152.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

153.    Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek. Even in the event Defendants could have applied a tip credit towards Plaintiffs and Tipped Workers' minimum wages, Defendants failed to pay proper overtime pursuant to the FLSA, which is calculated based off of the full minimum wage rate, and not the reduced cash rate for Tipped Workers.

154.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### Fair Labor Standards Act - Misappropriated Tips
### (Brought on behalf of Plaintiffs and the FLSA Collective)

155.    Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

156.    The provisions regarding misappropriate gratuities set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

157.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

158.    Defendants unlawfully retained gratuities and/or administrative fees intended for Plaintiffs and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

159.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by having their gratuities misappropriated in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Rule 23 Class)**

160.    Plaintiffs, on behalf of themselves and the Rule 23 Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

161.    At all times relevant, Plaintiffs and the Rule 23 Class conferred a benefit on Defendants by providing service to the Restaurants' guests, resulting in gratuities paid to the Restaurants.

162.    At all times relevant, Defendants were aware of these benefits conferred upon them by Plaintiffs and the Rule 23 Class.

163.    At all relevant times, Defendants retained approximately 5% of the gratuities left by customers to Plaintiffs and the Rule 23 Class. Moreover, Defendants retained an additional amount and distributed these gratuities to non-tip eligible employees, such as promoters and sushi chefs.

164.    Under the circumstances, Defendants retention of this portion of gratuities would be inequitable, as Defendants are using gratuities left for the benefit of Tipped Workers for their own purposes, such as profit to themselves. Moreover, Defendants' menus and receipts do not state that Defendants are retaining 5% of the gratuities left to Tipped Workers, or are distributing a portion of tips to tip-ineligible employees, such as promoters and sushi chefs.

165.    As a result, Plaintiffs and the Rule 23 Class are entitled to the amount of all gratuities retained by Defendants from December 17, 2015 through final judgment pursuant to Fla. Stat. 95.11(3).

**FIFTH CAUSE OF ACTION**
**Conversion**
**(On behalf of Plaintiffs and the Rule 23 Class)**

166.    Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

167.    At all times relevant, Plaintiffs and the Rule 23 Class had a property interest in gratuities left by customers at the Restaurants. In this regard, customers were not advised that Defendants would be retaining approximately 5% of gratuities for themselves. Moreover, customers were not advised that Defendants would be retaining an additional amount of gratuities and distributing them to non-tip eligible positions, such as promoters and sushi chefs.

168.    Defendants asserted dominion over Plaintiffs' and the Rule 23 Class Members' gratuities by retaining approximately 5% of gratuities left by customers at the Restaurants, and an

additional amount that was distributed to tip-ineligible employees, such as promoters and sushi chefs.

169.    The retained gratuities are readily identifiable through Defendants' records.

170.    As a result, Plaintiffs and the Rule 23 Class are entitled to the amount of all gratuities retained by Defendants from December 17, 2015 through final judgment pursuant to Fla. Stat. 95.11(3).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Mandrake and Kiki on the River. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid minimum wages, unpaid overtime wages, and misappropriated gratuities, and an additional and equal amount as liquidated damages, pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.    The full amount of all gratuities unlawfully retained by Defendants;

F.      Reasonable attorneys' fees and costs of the action; and

G.      Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
            February 27, 2020

Respectfully submitted,

/s/  Armando A. Ortiz
Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Armando A. Ortiz (FBN: 0102778)
28 Liberty 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and*
*the Putative Collective*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Armando A. Ortiz

Armando A. Ortiz

## SERVICE LIST

Patrick E. Gonya, Jr.
**CAREY RODRIGUEZ MILIAN GONYA, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 356-5478
Facsimile: (305) 356-3428
pgonya@careyrodriguez.com

*Counsel for Defendant Klima LLC*

David M. Levine
**SANCHEZ FISCHER LEVINE, LLP**
1200 Brickell Avenue, Suite 507
Miami, Florida 33131
Telephone: (305) 925-9947
dlevine@sfl-law.com

*Counsel for Defendants 450 North River Drive, LLC; RJ River LLC; RJ 210 LLC; 210 23rd Management, LLC; Roman K. Jones; Aristidis Nanos; Mark Lehmkuhl; and Lee Lyons*