# EXHIBIT A

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is made between Gianni Arriaga, Samantha Vazquez, Michael Avila, Kiera Gabbidon, Jason Gonzalez, Phillip Boukobza, Nicholas Carrasquillo, Abraham Negron and Natalia Rabko on one hand (collectively "Plaintiffs"), and 450 North River Drive, LLC ("450") RJ River, LLC ("RJ River"), RJ 210, LLC ("RJ 210)", Klima, LLC ("Klima"), 210 23rd Management, LLC ("210 MGMT"),  Roman K. Jones ("Jones"), Aristidis Nanos ("Nanos"), Mark Lehmkuhl ("Lehmkuhl"), and Lee Lyon ("Lyon") on the other hand. 450, RJ River, RJ 210, Klima, 210 MGMT, Jones, Nanos, Lehmkuhl, and Lyon are collectively referred to herein as "Defendants". Plaintiffs and Defendants are collectively referred to herein as the "Parties".

WHEREAS, Plaintiffs filed a proposed collective and class action Complaint against the Defendants in the United States District Court for the Southern District of Florida, Miami Division, bearing Case Number 19-25174 ("Lawsuit") and included claims under the Fair Labor Standards Act ("F.L.S.A."), claims for unjust enrichment, and claims for conversion; and,

WHEREAS, the Parties engaged in sufficient informal discovery necessary to analyze the strengths and weakness of the pending claims and defenses, and calculate damages,

WHEREAS, the Parties participated in a Settlement Conference with the Federal Magistrate Judge and conducted in follow settlement communications, which resulted in a settlement as memorialized herein; and,

WHEREAS, the Parties have agreed to settle Plaintiffs' claims on an individual, and non-class or collective basis; and,

1

WHEREAS, the Defendants deny all wrongdoing and deny Plaintiffs' claims.   The Defendants have agreed to settle this dispute with Plaintiffs in order to avoid the inherent costs, burdens, and uncertainties associated with protracted litigation and to be able to focus their efforts and time on restoring and rebuilding their respective businesses from the results of the COVID-19 pandemic; and,

WHEREAS, "Defendants" shall include their respective past and present incorporators, Board of Directors, officers, owners, members, servants, agents, insurers, investors, attorneys, employees, representatives, successors, assigns, heirs, estates, partners associates, affiliates, and all current, past and future subsidiaries, parents, related and affiliated corporations, sister corporations, and divisions, and all persons or entities affiliated in any manner with any Defendant alleged heretofore or hereafter to be a statutory employer under the F.L.S.A. of any Plaintiff; and,

WHEREAS, "Plaintiffs" shall include their respective their successors, administrators, agents, estates, assigns and attorneys, any other parties of interest and/or representatives; and,

WHEREAS, this General Release and Settlement Agreement between Plaintiffs and Defendants is hereinafter referred to as the "Release," the "Agreement," or the "Settlement Agreement."

NOW, THEREFORE, in consideration of the covenants contained herein, the payment from and on behalf of Defendants to Plaintiffs, and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.      The foregoing recitals are true and correct.

2.    **Mutual General Release:**

A.    **Plaintiffs' Release:**   Each of the Plaintiffs hereby irrevocably and unconditionally releases, acquits, remises, and forever discharges each of the Defendants and all included entities listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action of whatever kind and character, in law or in equity, in contract or tort or public policy, both known and unknown, suspected or unsuspected, disclosed and undisclosed, actual and consequential, specific and general, however denominated (including, but not limited to, those arising out of, or in any way connected with, the work relationship of Plaintiffs with Defendants in any position at any time, and including, but not limited to, all claims raised in the Lawsuit), for wages, bonuses, overtime pay, front or back pay, minimum wage, income from any source, declaratory or injunctive relief, lost benefits, commission, liquidated damages, compensatory or punitive damages, money, remuneration, attorneys' fees, costs, expert's fees and costs, expenses, or thing of value whatsoever, by Plaintiffs and against Defendants, including, but not limited to, claims arising under or relating to:

B.    The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq*.

C.    29 U.S.C. Section 207(i)

D.    Article X § 24, Florida Constitution, Florida Minimum Wage Amendment;

E.    The Florida Minimum Wage Act ("FMWA")

F.    Florida Statute § 440.205;

G.    The Florida Human Rights Act and the Florida Civil Rights Act of 1992 codified in Chapter 760 of the Florida Statutes;

H.    The Labor Management Relations Act of 1947;

I.      The Equal Pay Act of 1963;

J.      The Occupational Safety and Health Act of 1970;

K.      The Rehabilitation Act of 1973;

L.      The Health Maintenance Organization Act of 1973;

M.      The Immigration Reform and Control Act of 1986;

N.      The Family and Medical Leave Act of 1993 ("FMLA");

O.      Executive Orders 11141, 11246, and 11375;

P.      42 U.S.C. § 1981, § 1982, § 1983, § 1985, or § 2000;

Q.      The Americans with Disabilities Act ("ADA"), as amended;

R.      The Consolidated Omnibus Reconciliation Act ("COBRA");

S.      The Employee Retirement Income Security Act of 1974 ("ERISA");

T.      Any claims for damages, injuries, illnesses, workers compensation, or complications now known or that may later be discovered, including all effects and consequences thereof;

U.      The Civil Rights Acts of 1866, 1871, 1964 (including Title VII of that Act), or 1991;

V.      The Internal Revenue Service Code;

W.      Chapter 448, Florida Statutes;

X.      Chapter 440, Florida Statutes;

Y.      The Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act of 1990 ("OWBPA");

Z.      Any claim for defamation, libel, or slander;

AA.     Any federal, state or local laws prohibiting employment discrimination;

4

BB.    And all other claims under federal, state of local statute, administrative code, or ordinance or common law, including but not limited to those relating to discrimination or retaliation in employment.

The listing of specific types of claims as set forth above is not intended to limit in any way the general and comprehensive scope of this Release from Plaintiffs to the Defendants. Plaintiffs further agree that it is their express intent to enter into this full and final settlement and compromise of any and all claims against Defendants, whatsoever, including, but not limited to, those arising out of, or in any way connected with, the employment of Plaintiffs, at any time, from the beginning of the world to the date of execution by Plaintiffs of this Agreement.  Nothing in this Agreement precludes Plaintiffs from filing a charge with, or testifying, assisting, or participating in any investigation, hearing or proceeding conducted by the Equal Employment Opportunity Commission or equivalent state or local agency.  However, Plaintiffs agree to waive their right to monetary or other equitable relief should she file an administrative charge or any claim be pursued by any person, organization or other entity against the Defendants on their behalf arising out of or related to their employment with or separation from the Defendants. Plaintiffs recognize that no suit can be filed against Defendants for any claim released as part of this Agreement.

Except for enforcement of this Agreement, if Plaintiffs should later initiate or participate in any legal action or proceeding against Defendants, for any claim arising or accruing before and through the effective date of this agreement, this Agreement will be conclusive evidence that any such claims have been released.

**B**.    **Defendants' Release**.   In exchange for the promises and covenants provided herein, Defendants agree to release Plaintiffs from any and all claims, known or unknown, from the start of time up through the date of signing this agreement.  Except for enforcement of this

Agreement, if Defendants should later initiate or participate in any legal action or proceeding against Plaintiffs, for any claim arising or accruing before and through the effective date of this agreement, this Agreement will be conclusive evidence that any such claims have been released.

3. **Settlement Payment**.  As settlement for all of Plaintiffs' claims against Defendants, including, but not limited to, those asserted in the Lawsuit, and in exchange for a general release, payment in the total amount of $30,000 ("Settlement Payment") as allocated below:

a) The total sum of One Thousand Two Hundred Twenty-One Dollars and Eighteen Cents ($1,221.18) payable to Plaintiff **Gianni Arriaga** by one check, for which Plaintiff Arriaga will receive a form 1099);

b) The total sum of Three Thousand Five Hundred Sixty-Three Dollars and Eighteen Cents ($3,563.18) payable to Plaintiff **Michael Avila** by one check, for which Plaintiff Avila will receive a form 1099);

c) The total sum of Five Hundred Dollars and Zero Cents ($500.00) payable to Plaintiff **Phil Boukobza** by one check, for which Plaintiff Boukobza will receive a form 1099;

d) The total sum of One Thousand Six Hundred Ninety Dollars and three Cents ($1,690.03) payable to Plaintiff **Nicholas Carrasquillo** by one check, for which Plaintiff Carrasquillo will receive a form 1099;

e) The total sum of Five Hundred Dollars and Zero Cents ($500.00) payable to Plaintiff **Kiera Gabbidon** by one check, for which Plaintiff Gabbidon will receive a form 1099;

f) The total sum of Four Thousand Two Hundred Seventy-One Dollars and Sixty-Three Cents ($4,271.63) payable to Plaintiff **Jason Gonzalez** by one check, for which Plaintiff Gonzalez will receive a form 1099;

g) The total sum of Three Thousand Forty-One Dollars and Twenty-Five Cents ($3,041.25) payable to Plaintiff **Abraham Negron** by one check, for which Plaintiff Negron will receive a form 1099;

h) The total sum of Nine Hundred Eighty-Five Dollars and Forty-Three Cents ($985.43) payable to Plaintiff **Samantha Vasquez** by one check, for which Plaintiff Vasquez will receive a form 1099;

i) The total sum of Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) payable to Plaintiff **Natalia Rabko** by one check, for which Plaintiff Rabko will receive a form 1099;

j) The total sum of Eleven Thousand Seven Hundred Twenty-Seven Dollars and Thirty Cents ($11,727.30), payable to "Fitapelli & Schaffer, LLP" by check. This payment is in connection with Plaintiffs' attorneys' fees and costs, and will be reported on a Form 1099 to Plaintiffs' Counsel.

The Settlement Payment must be received by Plaintiffs' counsel within 20 days from the date the Court issues its Order approving of the settlement of the Lawsuit in accordance with this Agreement (and receipt of all signed W9 Forms). The Settlement Checks shall be sent to: "Fitapelli & Schaffer, LLP, C/O Armando Ortiz, 28 Liberty Street, 30th Floor, New York, New York 10005" or any other address as agreed to by counsel due to ongoing COVID-19 office closings. Plaintiffs' Counsel shall be responsible for distributing the individual settlement checks to Plaintiffs.

Plaintiffs and their counsel agree that all payments hereunder shall be paid as an I.R.S. Form 1099 recipient.  Plaintiffs and their counsel shall be responsible and shall hold harmless and indemnify Defendants for all tax liability arising from employee-side share of taxes and payments labeled as attorneys' fees and costs, if any, in connection herewith.  Plaintiffs understand and agree that the Settlement Payment is in full and final satisfaction of any claim for attorneys' fees or costs arising out of or relating to the Lawsuit.

Plaintiffs warrant that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted by any individual, entity, government agency, insurance company, physician, hospital, ambulance service, or other medical provider, arising from or relating to this Agreement, the Settlement Payment, or any medical expense or payments arising from or related to any alleged accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement or the release set forth herein.  Plaintiffs further agrees that to whatever extent Medicare liens or any other liens may exist with respect to the Settlement Payment, Plaintiffs will indemnify, defend and hold Defendants, including their insurers, harmless from any and against any claims on such liens.

Plaintiffs warrant and represent that they have not assigned, pledged or hypothecated in whole or in part any claim released herein.

4. **Approval Procedure & Dismissal With Prejudice**.  The Parties agree they will work together in good faith to accomplish the Court approval of all terms of this Settlement Agreement. The Parties shall execute the Stipulation of Dismissal attached as **Exhibit A**, which will be filed in Court along with the approval motion.

In the event the Court does not enter an Order dismissing the Lawsuit with prejudice within 10 days receipt of the Settlement Payment, counsel for Plaintiffs and Defendants shall work

8

together in good faith to provide any necessary applications to the Court to dismiss the action with prejudice. The Southern District of Florida shall retain jurisdiction to enforce this Agreement.

5. **Waiver of Re-instatement/ Re-Application.** Plaintiffs agree and recognize that their relationship with Defendants has been permanently and irrevocably dissolved. Plaintiffs expressly agree that they will not apply for employment or rehire with the restaurants Kiki on the River and/or Mandrake, and that this this Agreement is good and sufficient cause for Defendants, individually or collectively, to reject any such application for employment or independent contractor or consultant work at Kiki on the River and Mandrake.  In the event the Plaintiffs inadvertently become employed or contracted by Defendants at Kiki on the River and/or Mandrake, Plaintiffs agree that, upon learning of such inadvertence, they will immediately resign or terminate such work or relationship, consistent with the terms of this Agreement

6. **Not an Admission of Liability.**  It is understood, agreed and stipulated between the parties that the consideration described herein is in complete and full accord, satisfaction and discharge of disputed claims, and that Defendants do not in any manner by virtue of this Agreement, or payment of the consideration therefore, admit liability to anyone as a result of any incident, act or omission described in or cognizable by the aforementioned claims, charges or causes of action, and it is recognized that Defendants denied and continue to deny all such allegations.

7. **Complete Agreement and Consultation with Counsel.**  This Agreement contains the entire agreement, understanding and stipulation between the parties hereto.  The Parties to this Agreement acknowledge that they have had full possession of any and all facts with regard to their claims or rights, and that they have consulted with their counsel.  The terms of this Agreement are contractual, not mere recitals, and may be enforced in Court.

8.      Each of the Parties warrants to each other that each has full power, authority and capacity to execute this Agreement.  The Parties represent to each other that the effect of this Agreement has been fully explained to each of them and the Agreement is understood and agreed to by them.

9.      This Agreement is deemed to have been drafted jointly by the Parties.  Any uncertainty or ambiguity shall not be construed for or against any other party based on attribution of drafting to any party.  The terms of this Agreement are executed without reliance upon any representations except those contained herein, and the parties have carefully read this General Release and Settlement Agreement and sign the same of their own free will.

10.      Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

11.      This Agreement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of the State of Florida, and shall be subject to the exclusive jurisdiction of the Courts located in Miami-Dade County, Florida.  All parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties herein.  The parties expressly waive their right to a trial by jury in the event of any dispute regarding the enforcement or construction of this Agreement.  Should any Party to this Agreement be required to enforce the terms of this agreement against a breaching Party, upon a proven breach, the prevailing party shall be entitled to her/his/its reasonable attorneys' fees and costs.

12.     **Amendment**. This Agreement may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement.

13.     **Successors and Assigns.** This Agreement shall be binding upon the parties hereto and upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns, and shall inure to the benefit of said parties and each of them and to their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors and assigns.

14.     **Confidentiality, Non-Disparagement, and Neutral Reference**. Plaintiffs shall not give any information or make any statements a reasonable person would view as tending to impugn, disparage, defame, discredit or detract from Defendants, their shareholders, affiliates, attorneys, employees (past or present).  Such communication includes all social media, including, but not limited to, Facebook, blogs, twitter, Instagram, or similar social media platforms. The parties acknowledge and agree that this prohibition extends to statements, written or oral, made to anyone, including, but not limited to, the news media, social media, any board of directors or advisory board of directors, competitors, strategic partners, vendors, and employees (past and present). Plaintiffs shall not interfere with Defendants' relationships with any person who is an employee or independent contractor of any Defendant or the Defendants collectively.

In exchange, Defendants shall agree to provide Plaintiffs with a neutral reference in the event any Plaintiffs seeks to use Defendants as a reference for employment.  Defendants shall only disclose that Plaintiff's dates of employment, position, and rate(s) of pay.  Plaintiffs will direct any references to contact human resources personnel to provide such neutral references.

This Agreement is also STRICTLY CONFIDENTIAL and governed by this

confidentiality provision, unless Ordered contrary by the Court overseeing the Lawsuit.  Plaintiffs and their counsel and Defendants and their counsel shall and must jointly seek approval of this settlement from the Court upon *in camera* inspection without this settlement becoming part of the public record.  Plaintiffs and their counsel each agree that they will not disclose, publicize, or discuss any of the terms or conditions of this Agreement with anyone, except their attorney, spouse and/or accountant, or if compelled to testify by a subpoena or Court Order.  In the event that Plaintiffs disclose this Agreement or any of its terms or conditions to his or her spouse, attorney, and/or accountant, it shall be their duty to advise said individual(s) of the confidential nature of this Agreement; and direct them not to disclose, publicize, or discuss any of the terms or conditions of this Agreement with anyone else.  Moreover, Plaintiffs agree that a breach of this Agreement will result in irreparable and continuing damage, for which there will be no adequate remedy at law.  In the event of a breach of the confidentiality and non-disparagement provisions of this Agreement by either Plaintiff, the aggrieved Defendant party in such event shall immediately be entitled to pursue any and all remedies they may have against the breaching party in any court of competent jurisdiction by specific performance, injunction, damages, or such other remedies and relief as may be available, regardless of any contrary provision of this Agreement. Additionally, due to the difficulty of measuring damages in the event of a breach, the Parties agree that, in the event of a breach after the settlement payment is made, the breaching party, shall owe the aggrieved party as liquidated damages the total amount of their Individual Settlement Payment noted in Section 3. The Parties both understand and agree that this Paragraph is a material provision of this Agreement and that any breach of this Paragraph shall be a material breach of this Agreement, and that an aggrieved party would be irreparably harmed by violation of this provision.  Should the Court not approve this confidentiality provision, the Settlement shall not be terminated and will be

otherwise valid and binding on the Parties.

14.    Plaintiffs hereby acknowledge that prior to executing this Agreement, they were advised in writing and was given sufficient time to consider the Agreement.  Plaintiffs acknowledge that they entered into and signed this Agreement knowingly, voluntarily, freely, of their own volition and with such consultation with counsel as deemed appropriate.

15.    This Agreement may be hand or electronically signed in counterparts, and fax or scan copies shall be considered the same as an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

Gianni Arriaga (Jul 6, 2020 13:08 EDT)
_____
**Gianni Arriaga**

Date: Jul 6, 2020
_____


_____
**Samantha Vazquez**

Date:_____


_____
**Michael Avila**

Date:_____


_____
**Kiera Gabbidon**

Date:_____

13

otherwise valid and binding on the Parties.

14.     Plaintiffs hereby acknowledge that prior to executing this Agreement, they were advised in writing and was given sufficient time to consider the Agreement.   Plaintiffs acknowledge that they entered into and signed this Agreement knowingly, voluntarily, freely, of their own volition and with such consultation with counsel as deemed appropriate.

15.     This Agreement may be hand or electronically signed in counterparts, and fax or scan copies shall be considered the same as an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

_____

**Gianni Arriaga**

Date:_____

*Samantha Vazquez*
Samantha Vazquez (Jul 6, 2020 13:18 EDT)
_____

**Samantha Vazquez**

Date:_____
Jul 6, 2020

_____

**Michael Avila**

Date:_____

_____

**Kiera Gabbidon**

Date:_____

13

otherwise valid and binding on the Parties.

14.     Plaintiffs hereby acknowledge that prior to executing this Agreement, they were advised in writing and was given sufficient time to consider the Agreement.   Plaintiffs acknowledge that they entered into and signed this Agreement knowingly, voluntarily, freely, of their own volition and with such consultation with counsel as deemed appropriate.

15.     This Agreement may be hand or electronically signed in counterparts, and fax or scan copies shall be considered the same as an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

_____
**Gianni Arriaga**

Date:_____


_____
**Samantha Vazquez**

Date:_____

_Michael Avila (Jul 7, 2020 20:48 EDT)_
_____
**Michael Avila**

Date:___Jul 7, 2020_____


_____
**Kiera Gabbidon**

Date:_____

13

otherwise valid and binding on the Parties.

14.      Plaintiffs hereby acknowledge that prior to executing this Agreement, they were advised in writing and was given sufficient time to consider the Agreement.   Plaintiffs acknowledge that they entered into and signed this Agreement knowingly, voluntarily, freely, of their own volition and with such consultation with counsel as deemed appropriate.

15.      This Agreement may be hand or electronically signed in counterparts, and fax or scan copies shall be considered the same as an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

_____

**Gianni Arriaga**

Date:_____

_____

**Samantha Vazquez**

Date:_____

_____

**Michael Avila**

Date:_____

_____

**Kiera Gabbidon**

Date: Jul 8, 2020

13

_Jason (Jul 8, 2020 17:40 EDT)_

_____

**Jason Gonzalez**

Date: Jul 8, 2020
_____

_____

**Phillip Boukobza**

Date:_____

_____

**Nicholas Carrasquillo**

Date:_____

_____

**Abraham Negron**

Date:_____

_____

**Natalia Rabko**

Date: _____

14

_____

**Jason Gonzalez**

Date:_____


_____
*Phil Boukobza*
Phil Boukobza (Jul 6, 2020 15:25 EDT)
_____

**Phillip Boukobza**

Date:_____Jul 6, 2020_____


_____

**Nicholas Carrasquillo**

Date:_____


_____

**Abraham Negron**

Date:_____


_____

**Natalia Rabko**

Date: _____

14

_____

**Jason Gonzalez**

Date:_____


_____

**Phillip Boukobza**

Date:_____

*Nicolas Carrasquillo (Jul 6, 2020 15:01 EDT)*
_____

**Nicholas Carrasquillo**

Date:___Jul 6, 2020_____


_____

**Abraham Negron**

Date:_____


_____

**Natalia Rabko**

Date:_____

14

_____
**Jason Gonzalez**

Date:_____



_____
**Phillip Boukobza**

Date:_____


_____
**Nicholas Carrasquillo**

Date:_____


_____
**Abraham Negron**

Date:_____ Jul 17, 2020 _____



_____
**Natalia Rabko**

Date: _____

_____
**Jason Gonzalez**

Date:_____


_____
**Phillip Boukobza**

Date:_____


_____
**Nicholas Carrasquillo**

Date:_____


_____
**Abraham Negron**

Date:_____


_____
Natalia Rabko (Jul 8, 2020 11:02 EDT)

**Natalia Rabko**

Date:   Jul 8, 2020
_____

14

_____
**Authorized Representative of 450 North River Drive, LLC**

_____
**Printed Name**

Date: _____

_____
**Authorized Representative of RJ River, LLC**

_____
**Printed Name**

Date: _____

_____
**Authorized Representative of RJ 210, LLC**

_____
**Printed Name**

Date: _____

_____
**Authorized Representative of Klima LLC**

_____
**Printed Name**

Date: _____

15

_____
**Authorized   Representative   of   210   23rd
Management, LLC**

Thomas Jones.
_____
**Printed Name**

Date: _____07/15/20._____


_____
**Roman K. Jones**

Date: _____07/15/20._____


_____
**Aristidis Nanos**

Date: _____07/15/20._____


_____
**Mark Lehmkuhl**

Date: _____07/15/20_____


_____
**Lee Lyon**

Date: _____7/10/20_____


16

_____
**Authorized Representative of 450 North River Drive, LLC**

_____
**Printed Name**

Date:_____



_____
**Authorized Representative of RJ River, LLC**

_____
**Printed Name**

Date:_____



_____
**Authorized Representative of RJ 210, LLC**

_____
**Printed Name**

Date:_____



_____
**Authorized Representative of Klima LLC**

_____
**Printed Name**

Date:_____